JANE WINSLOW

*v.*

NANCY COOPER.

*Filed at Springfield September 28, 1882.*

1. LIMITATIONS—*act of 1839—what is color of title.* A quitclaim deed for a parcel of ground which includes a strip claimed adversely by another party, is color of title to such strip, under the seven years Limitation law, and possession and payment of taxes thereon, under such claim and color of title, for seven successive years, will be a bar to a recovery in ejectment under such adverse claim or title.

2. SAME—*possession not lost by use in others subordinate to the party claiming.* The use of a strip of land adjoining a party's lot, by the claimant's permission, in connection with other property adjoining it, as a common driveway by others, and also by himself, does not impair such claimant's possession under the Limitation law. In such case the use of the strip is not adverse, but strictly in subordination to his right of possession.

3. EVIDENCE—*on question of possession under claim and color of title.* The signing and acknowledging of a plat of certain grounds, for the purpose of describing the land of the signer, and that adjacent thereto, by numbers, for conveyance and taxation, in which a strip of land was marked as belonging to another, and the declaration of such signer that his land only came to a certain fence, which would not include such strip, is competent evidence against such party on the question of possession under claim and color of title.

4. SAME—*admissions—declarations—of their weight as evidence.* In order to make an admission or declaration of a party of any value as evidence, it ought to appear that it was made by the party with a full knowledge of his rights, and deliberately. If made in ignorance of his rights, it amounts to nothing. The jury, in weighing such evidence, should consider all the circumstances throwing light on the admission.

5. SAME—*declaration of former owner of land, as affecting title.* On the trial of an action of ejectment, the plaintiff, who claimed title under one H., proposed to prove by a witness that once, while he and H. were looking at the land in dispute, the witness proposed to buy it of H., but H. declined to sell it, for the reason that he wanted it for a driveway, which the court refused to allow: *Held*, that this evidence was not admissible on the ground that it was a part of the *res gestæ*, nor on the ground that it was a declaration against interest.

6. SAME—*declaration as to disputed boundary.* Nor is such evidence admissible on the ground it was a declaration as to the boundary line between

H. and the defendant, it not being shown that H. was in possession of the land, and that there was any dispute then,- in regard to the boundary line, between H. and the .defendant, especially when the effect of such evidence was not to settle a boundary line, but to show title in H.

7. ESTOPPEL *in pais—not available in an action of ejectment.* Estoppels *in pais* affecting permanent interests in land, can only be made available in a court of equity. They can not be used in the.trial of an action of ejectment.

8. SAME—*declarations must have been acted on.* The declarations of a party not made with a knowledge of the facts, or with the intention they should be acted on, or which, in fact, have not been acted upon, will not constitute an estoppel *in pais.*

9. DESCRIPTION—*sufficiency as to certainty.* A description of land, in a tax receipt or deed, as, the "North side S. W. ¼ of block 2," etc., is not void for indefiniteness and uncertainty. Those words mean the north half of the south-west quarter of the lot. Mathematical accuracy is not indispensable, and descriptions are not to be rejected because they are awkwardly and inaptly expressed. If, taking the language in the connection in which it is used, the meaning is reasonably clear to the ordinary apprehension, it is sufficient.

APPEAL from the Circuit Court of McLean county; the Hon. FRANKLIN BLADES, Judge, presiding.

Mr. WM. E. HUGHES, and Mr. B. D. LUCAS, for the appellant:

The admissions and declarations as to the boundaries of land, made by a former owner, are proper evidence. *Jackson* v. *McCall*, 10 Johns. 377; *Doggett* v. *Shaw*, 5 Metc. 223; *Van Deusen* v. *Turner*, 12 Pick. 522; *Orr* v. *Hadley*, 36 N. H. 575; *Ware* v. *Brookhouse*, 7 Gray, 454; *Wood* v. *Foster*, 8 Allen, 24; *Sullivan County* v. *Gordon*, 57 Me. 522; *Wood* v. *Willard*, 37 Vt. 377; *Smith* v. *Powers*, 15 N. H. 546.

Appellee is estopped from asserting title to the strip of land, by her agreement or plat under seal. There is no pretense made that at the time Mrs. Cooper executed this certificate in Mr. Ela's office, she imposed any conditions as to its delivery. Not having done so, the certificate, deed, sealed agreement, indenture,—call it what you will,—took effect then and there.

Where a party executes a deed which is left with an agent, or in the hands of a third party, this will amount to a delivery. *Henrichsen* v. *Hodgen*, 67 Ill. 179; *Rawson* v. *Fox*, 65 id. 200. And the subsequent assent of the grantee to receive it, renders it operative. *Kingsbury* v. *Burnside*, 58 Ill. 310; *Dale* v. *Lincoln*, 62 id. 22.

The plat is good *inter partes*, without being acknowledged and recorded. *Semple* v. *Miller*, 2 Scam. 315; *Bowman* v. *Wettig*, 39 Ill. 416.

When lines are laid down on a map or plan, and are referred to in a deed, the courses, distances, and other particulars appearing on such plan are to be as much regarded as the true description of the land conveyed as they would be if expressly recited in the deed. *Davis* v. *Ramsford*, 17 Mass. 207; *Magoun* v. *Lapham*, 21 Pick. (Mass.) 135; *Blaney* v. *Rice*, 20 id. 62.

If parties to a deed bound the land conveyed upon a street, they are, in an action concerning the boundary of the land, estopped to deny the existence of the street. *Parker* v. *Smith*, 17 Mass. 413.

So, too, where the land is bounded on a private way not defined in the deed, but shown on a plan referred to therein. *Fox* v. *Union Sugar Refinery*, 100 Mass. 292; *Morgan* v. *Moore*, 3 Gray, 319; *Lunt* v. *Holland*, 14 Mass. 149; *Davis* v. *Ramsford*, 17 id. 207; *Parker* v. *Bennett*, 11 Allen, 388; *Murdock* v. *Chapman*, 9 Gray, 156.

Appellee is estopped from asserting title to the land by matters *in pais*. The rule is well settled that an estoppel *in pais* can be shown in ejectment suits in this State. *Noble* v. *Chrisman*, 88 Ill. 186.

Mr. C. RAYBURN, and Mr. IRA J. BLOOMFIELD, for the appellee:

Appellee had seven consecutive years' possession under color of title, and paid all taxes assessed during that time.

The description in the tax receipts, in connection with the other evidence, is not void for uncertainty. *Blakely* v. *Bestor*, 13 Ill. 708; *Enslow* v. *Kennicott*, 46 id. 187; *Chiniquy* v. *People*, 78 id. 578.

The receipts, with the other evidence, are sufficient to satisfy the mind of any reasonable man on what land the taxes were paid, and that is all the law requires. 80 Ill. 268; 93 id. 116; 101 id. 349.

The declarations of a deceased owner as to landmarks or boundaries, if disinterested, are admissible even in favor of those claiming under him; but as to title, refusal to sell, or the intended use of the property, they are inadmissible.

An estoppel *in pais* that will transfer title to real estate can not be enforced in a court of law, and there is no estoppel by deed in this case. *Mills* v. *Graves*, 38 Ill. 456; *Blake* v. *Fash*, 44 id. 302; *Livingston* v. *Hayes*, 34 Mich. 384; 102 Ill. 514.

Making and recording a plat will serve to dedicate streets and alleys to the public. The Statute of Frauds does not apply to such a conveyance of land, and a dedication may be made by parol, but not transfers between private individuals. *Crowell* v. *Maughs*, 2 Gilm. 422.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

This was ejectment by appellant, against appellee, for a certain strip of ground, some four and a half feet in width and sixty feet in depth, in the city of Bloomington. The proof shows that on the 23d of September, 1864, Gridley and wife conveyed, by quitclaim deed, to appellee, a parcel of ground, which includes the strip in controversy. This constituted color of title, and the principal questions discussed in argument relate to the sufficiency of the evidence to show possession and payment of taxes by appellee, under this color of title, for seven successive years.

There is a sharp controversy in the testimony of different witnesses with regard to the question of possession, but we are unable to say the court below clearly erred in finding the preponderance to be with appellee. A number of witnesses testify that a fence was built, as early as 1840, on the south line, substantially, of the strip in controversy, and that appellee was in possession, under her deed, of the ground north of that fence, so as to include the strip in controversy, from the date of her deed until the commencement of the suit, continuously. The number of those who thus support appellee's claim of possession is greater than that of those who controvert it, and from what is before us it is impossible for us to say that the latter show any marked superiority, in respect of fairness or intelligence, over the former.

Appellant's counsel, however, contend that appellee is equitably estopped to claim the strip in controversy, for two reasons: First, on the 28th of July, 1880, she, jointly with other adjacent property holders, signed and acknowledged a plat, made for the purpose of more definitely describing her property, and that adjacent thereto, by numbers, for conveyance and taxation, and in that plat the strip in controversy was marked as belonging to appellant; second, just before James P. Hodge sold to appellant, himself and two brothers went through the alley which includes the strip in controversy, and when in front of appellee's they asked appellee how far down south her land went, to which she replied that it went down to the picket fence on Madison street,—and this, it is understood, does not include the strip in controversy. It would seem a sufficient answer to this, that estoppels *in pais* affecting permanent interests in land can only be made available in a court of equity. *St. Louis Stock Yards* v. *Wiggins Ferry Co.* 102 Ill. 514; *Wales* v. *Bogue,* 31 id. 464; *Mills* v. *Graves,* 38 id. 466; *Blake* v. *Fash,* 44 id. 302. But indispensable elements of an estoppel *in pais* are wanting. It is not shown the declarations were made with knowledge of the

facts, or with the intention they would be acted upon, or that they were in fact acted upon, (*Mayer* v. *Erhardt*, 88 Ill. 452, *People* v. *Brown*, 67 id. 435, *Flower* v. *Elwood*, 66 id. 438, *Knoebel* v. *Kircher*, 33 id. 308, and *Ball* v. *Hooten*, 85 id. 159,) and so it is equally insufficient to arrest the running of the Statute of Limitations, as contended by counsel, as to pass a legal title. This is undoubtedly competent evidence on the fact of possession under color and claim of title, but nothing more. If appellee admitted that her property did not include the strip in controversy, it was the strongest of evidence that she was not in possession of it under color and claim of title. But in order that such evidence shall be of any value, it ought to appear that it was made with full knowledge of her rights, and deliberately. If hastily made, and in ignorance of her rights, it amounts to nothing, and in all such cases, in weighing the evidence the jury should take all the circumstances throwing light on the admission into consideration.

The plat here was made by Ela, the county surveyor, at the instance of parties other than appellee. Her attention had not been directed to the subject until she was requested to sign it, and when she did sign it she says her attention was directed to other matters, and Ela did not call her attention to the particular effect of it. Whether in this latter statement she is entirely accurate, the circumstances were certainly not favorable to mature reflection, especially for an ignorant and uneducated person, as she was. She shows,— and in this is uncontradicted,—that a large political meeting was being held. She was engaged in preparing a dinner for a number of those in attendance, and was also interesting herself in raising money for her church. In the discharge of these two-fold duties it became necessary to pass Ela's door, and when about to do so she stepped into his room to ask him to make a subscription in aid of her church, when he presented the plat for her signature, and she signed it. On subsequent reflection she became dissatisfied with having

signed the plat, and next morning requested Ela to take her name from it. He proceeded no further with the plat, and there is no pretense that appellant, or any one else, has ever been led to act in a way they would not otherwise have acted, upon the faith of appellee's signature. To take this party's property away, or to close her mouth as to the truth in regard to the title, because of such an act, would bring the law into just and great reproach. What the truth was in regard to this line, and whether appellee knowingly and deliberately signed this plat, were proper questions for the jury, and upon which they have passed after hearing all the evidence that could be adduced on either side, and no artificial rule of law compelled them to believe in regard to it contrary to their senses.

The conversation with the Hodges is not recollected by appellee as it is by them. She says she was talking about the line back of her lot and east of her house, and not about the line south of her lot. The conversation, at best, appears to have been but casual. Appellee was not doing, nor required to do, any act in regard to her property, and it does not appear that she was apprized that any importance would attach to her answers. All the circumstances considered, it is quite probable the parties misunderstood each other, and we think the jury might well have so concluded. The declaration testified to by appellant is denied by appellee. We need but repeat, the effect of all the evidence upon the question of possession was for the jury, and we do not feel warranted in saying they palpably erred in that regard.

If, as appellee testifies, this strip was by her permission used, in connection with other property adjoining it on the south, as a common driveway, by others and also by herself, her possession was not thereby impaired. Under such circumstances their use of the strip is not adverse to, but strictly in subordination to, her right of possession.

16—104 ILL.

Appellant proposed to prove by a witness that once, while he and one Hodge were looking at the property in dispute, witness proposed to buy it of Hodge, but Hodge declined to sell it, for the reason that he wanted it for a driveway; but the court, on objection of appellee, refused to admit the evidence, and this ruling is now urged as error. It is patent that this evidence was not admissible on the ground that it was a part of the *res gestæ,* nor on the ground that it was a declaration against interest; and the only other ground of which we are aware upon which it might be plausibly claimed that it was admissible, is, that it was the declaration of a party in possession as to the boundary line between himself and another. (See *Noble* v. *Chrisman,* 88 Ill. 186.) But it was not shown there was any dispute, then, in regard to the boundary line between Hodge and appellee, nor is it entirely clear that Hodge was then in possession, as owner, of any ground lying on that side of appellee's property. But be that as it may, the effect of the proposed evidence is not to settle a boundary line, but to give title,—not to prove where the boundary line between Hodge and appellee was, but that Hodge owned the property in controversy.

The first payment for taxes made by appellee under her deed, was February 13, 1865. She then paid the taxes for 1864, which were not due until after she received her deed. On January 14, 1866, she paid the taxes for 1865, and on February 11, 1867, she paid the taxes for 1866. In each of the receipts for these payments the property is described as "North side, S. W. ¼ of block 2, Miller, Foster and others' addition to Bloomington." On March 10, 1868, she paid the taxes for 1867; March 30, 1869, she paid the taxes for 1868; January 31, 1870, she paid the taxes for 1869; February 21, 1871, she paid the taxes for 1870; and March 27, 1872, she paid the taxes for 1871. In each of these receipts the property is described as lot 4, block 2, Miller, Foster and others' addition to Bloomington. Appellee testifies that dur-

ing these years, and for subsequent years, she paid all the taxes assessed on the ground she claims and then occupied.

But counsel insist the payments made in 1865, 1866, and 1867, were void because of the indefinite and imperfect description of the property. We can not concur in this view. It is not denied that if the description had been "north half" instead of "north side," it would have been sufficient, and included the property in controversy. In *Chiniquy* v. *People*, 78 Ill. 570, we held that the words "east end" meant "east half," and there is obviously equal or greater propriety in here holding that the word "side" means "half." The word "side" is, undoubtedly, often used to express the idea of a line, edge or surface, but it is also sometimes used to express the half or part lying on one side or the other of a central line, either actual or imaginary, drawn through a body, and it depends entirely upon the context whether one meaning or the other be intended. Thus, "right side of the body," used in contradistinction to the left side, clearly means "right half." Thus, Webster, in his Unabridged Dictionary, gives as the fourth definition of the noun "side:" "One-half of the body (human or otherwise) considered as opposite to the other half; especially one of the halves of the body lying on either side of the mesial plane,—that is, of a plane passing from front to back through the spine." It may be admitted "north side" is an awkward and inapt way of describing the "north half," but, in cases like the present, mathematical certainty is not indispensable, and descriptions are not to be rejected merely because they are awkwardly or inaptly expressed. If, taking the language in the connection in which it is used, the meaning is reasonably clear to the ordinary apprehension, it is sufficient.

In construing this language we must commence with the idea that the intention in using it was to describe a definite and tangible part of the designated lot, for the purpose was to designate,—point out specifically,—property against which

taxes could be extended, and from which they could be collected by its sale. Manifestly, a line, edge or verge conveys no idea of property, and so, it is believed, it would be generally understood they could not have been intended. To embrace property, width as well as length was indispensable; and, this being conceded, it must follow that the "north half," or width from the north line to the central east and west line, was intended, for there is no possible intermediate limit, and width, without tangible and definite limit, is as meaningless, in describing property, as is a single straight line. If it be said A owns the north side of a given field, and B owns the south side of it, it is believed it will be universally understood that A and B own the whole field. No definite space is left to be occupied by any one else. In such case no one could doubt where is the dividing line between A and B. It can be nowhere else than an east and west line, drawn through the center of the field, dividing it into halves. The only difference here is, while the "north side" is expressed, its opposite or counterpart, "south side," is not expressed. If both were expressed in juxtaposition, there could be no doubt. How, then, can there be here reasonable doubt? From that which is expressed, and as expressed, it is clear its use is in implied juxtaposition to that which is not expressed,—that is, to say "north side," implies a "south side," and, used to indicate width as well as length, the two necessarily imply an entire definite surface. We are satisfied no violence is done to the language, and that justice will best be promoted by holding that "north side," in the connection in which the words are here used, means "north half."

After the payment of 1867 the assessments were made, and the taxes paid, in accordance with an assessor's plat, to which, so far as affects the present case, we perceive no substantial objection, and so we conclude, especially when the parol evidence showing an actual payment of taxes upon the

property possessed by appellee is taken into consideration, the proof of payment of taxes is sufficient.

The rulings of the court in regard to the instructions are, in some respects, not entirely free from critical objection, but we perceive no error in that regard which, after a full and careful consideration of the entire record, ought, in our opinion, to authorize a reversal. Assuming, as has been seen, we think the evidence warrants that the proof of payment of taxes and possession is ample, the verdict below is clearly right, and under no proper instructions ought a different result to have been reached.

The judgment will be affirmed.

*Judgment affirmed.*