## Alfred P. Veroni, Appellee, v. Jesse E. Smith, Appellant. Citizens' State Bank of Watseka, Appellee.

## Gen. No. 6,744.

1. VENUE, § 2*—*what is proper venue of action for accounting.* On a bill in equity for an accounting against one who is a resident of another county and a bank which is a resident of the county where the suit is brought, where, though the main object of the suit is to compel such nonresident defendant to make payments to defendant bank, it also appears that complainant has a vital interest in the accounting, as payments which may be made to the bank under a decree therein will reduce or even discharge his indebtedness to the bank, the suit is properly brought in such county instead of in the county where such nonresident defendant resides, notwithstanding the bill prays no decree against the defendant bank.

2. ACCOUNT, § 19*—*when equity has jurisdiction.* On a bill in equity for an accounting against an individual and a bank as defendants which seeks to compel the individual defendant to make certain payments to the bank whereby complainant's indebtedness to the bank will be extinguished or reduced, *held* that complainant could not have a complete and adequate remedy in any suit at law in the enforcement of his right to an accounting.

3. ACCOUNT, § 24*—*who are necessary parties to suit in equity.* Where the agreement which is the basis of the accounting is tripartite in character, the three parties thereto are necessary parties to a bill in equity for an accounting.

4. VENUE, § 2*—*what is effect of residence of defendant in suit for an accounting.* A bill in equity for an accounting is properly brought in any county where one of the defendants, parties to the tripartite agreement whereon such accounting is based, resides.

5. INSURANCE, § 64*—*when officer of insurance company waives priority rights to agent's commissions by assignment.* An agreement was entered into by the manager of an insurance company, an agent of such company and a bank—to which such agent was indebted, whereby such agent authorized the manager, and the manager agreed, to pay over to the bank renewal commissions becoming due the agent under his contract, the bank paying to, the manager an indebtedness due him from the agent. It was *held* that under the principles of equitable estoppel, the manager,

by the execution of the assignment agreement, waived any right of priority to the agent's commissions which he may have had under the agent's contract of employment, and also waived his right to forfeit these commissions under the contract.

Appeal from the Circuit Court of Iroquois county; the Hon. Frank L. Hooper, Judge, presiding. Heard in this court at the October term, 1919. Affirmed. Opinion filed April 21, 1920.

Pallissard & Benjamin and Hoyne, O'Connor & Irwin, for appellant.

J. W. Kern and C. G. Hirschi, for appellees.

Mr. Presiding Justice Niehaus delivered the opinion of the court.

In this case a bill in equity for an accounting was filed, in the circuit court of Iroquois county, by the appellee, Alfred P. Veroni, as complainant, against the appellant, Jesse E. Smith, manager of the Prudential Insurance Company, a resident of Cook county, and the Citizens State Bank of Watseka, Iroquois county, as defendants. The appellant Smith was served with summons and thereupon filed a special appearance in the case, and made a motion to dismiss the bill for want of jurisdiction, on the ground that he is a resident of Cook county and could not properly be sued in Iroquois county concerning the matters set up in the bill; that it appeared from the averments in the bill that the suit was brought to recover money from appellant under an alleged contract; that no judgment or decree was prayed against the other defendant who resided in Iroquois county; that there was no joint liability or several liability of the defendants apparent on the face of the bill; and that it was evident from the allegations in the bill, taken as true, that the complainant had an adequate remedy at law, and that the purpose of joining appellant with the other defendant, the Citizens State

Bank of Watseka, was to compel the appellant to litigate the matters in controversy in Iroquois county instead of Cook county. The court denied the motion, and this ruling is assigned as error. Taking the averments of the bill as true, the suit was properly commenced in Iroquois county. While it is apparent that the main object of the suit is to compel the appellant to make payments to the Watseka bank, yet it also appears that in the accounting to be had the complainant in the bill had a vital interest, inasmuch as the payments of the money which the bill seeks to compel to the Watseka bank would, to the extent thereof when made, reduce the complainant's indebtedness to the bank; and if the amounts were sufficient to pay all of the indebtedness, he would thereupon be relieved entirely from any further obligation to the bank. It is equally clear that he could not have a complete and adequate remedy in any suit at law in the enforcement of his right to an accounting. The agreement which is the basis of the accounting is tripartite in character, and the three parties thereto were therefore all necessary parties in the suit. It is proper to commence a suit in equity of this kind in any county where one of the defendants resides. Section 3, ch. 22, Hurd's Rev. St. (J. & A. ¶ 883).

After the issues had been made up, there was a hearing before the court concerning the matters averred in the bill, to determine the question of the appellee's right to enforce an accounting; and the court found from the evidence heard that the appellee was entitled thereto, and in accordance with such finding entered a decree to refer the cause to a special master for that purpose. Appellant prosecutes this appeal from the decree.

The evidence clearly tends to establish the following facts: That on the 6th day of February, 1909, the appellant, as manager of the insurance company mentioned, made a contract with the appellee under

which he was appointed as an agent to procure insurance policies for the company, and by the terms of the contract he was to receive as compensation certain commissions on policies procured by him, and certain other commissions on renewal premiums paid for the same policies. The clause for this additional compensation is section 17 of the contract, and follows: "The manager agrees to pay the Agent a commission of five per cent on renewal premiums collected by the Agent in the second to the tenth year of insurance, inclusive, on Non-Participating policies, except Endowment policies requiring less than twenty annual premiums and Guaranteed Five per cent. Twenty-Year Endowment policies and Five-Year Term policies, on which a commission of three per cent on renewal premiums collected by the Agent in the second to the tenth year of insurance, inclusive, shall be paid; provided that such policies shall have been secured by or through the Agent under this contract."

The contract also contains the following provisions which have a bearing on the matters in controversy, namely: Section 13. "That if this contract be terminated, the compensation paid to the Agent, with the amount then due under this contract, shall be in full settlement of all claims and demands in favor of the Agent under this contract, and that all compensation which a continuance of this contract might have secured to him shall be forfeited, except as herein provided." And section 16, which is as follows: "That if this contract shall be terminated, any indebtedness due the Manager from the Agent, under this or any previous contract, shall be a first lien upon the amounts due or to become due to the Agent, his executors, administrators or assigns by the terms of this contract, until the amount of such indebtedness with interest at the rate of five per cent per annum is fully paid."

The appellee ₁worked for the appellant as agent under his contract for a period of over 3 years preceding May 29, 1912, and had procured for the appellant a large number of insurance policies, under which he was entitled to receive commissions on the premiums paid for renewals from the second to the tenth year of their issuance in accordance with section 17 of his contract. In the meantime, the appellee had become indebted to the Watseka bank in the sum of $3,387.22; and the bank was insisting on a payment of the indebtedness, or that security be given for such payment. The appellee thereupon offered to assign to the bank his interest in the commissions which would become payable to him on the renewal premiums mentioned. The bank was willing to accept this security, and George R. Lee, the cashier of the bank and as a representative of the bank, with the appellee, called upon the appellant at Chicago to see if a satisfactory arrangement could be made with him concerning the matter of the assignment of the renewal commissions to the bank; and Lee testified that in the conversation which they had with the appellant at that time, the appellant stated that these renewal commissions would amount to something less than $9,000. The appellant at first refused to sanction the assignment, but finally agreed to it on the condition that the amount of the indebtedness which the appellee owed him, which he claimed was $1,477.78, was paid to him; the bank acceded to this, and the $1,477.78 was paid to the appellant in two checks which were drawn upon the bank. In consideration of this payment, the following assignment agreement was made between the parties:

"Chicago, Ill., May 29, 1912.

MR. J. E. SMITH, Manager,

The Prudential Insurance Company,

Chicago, Ill.

MY DEAR SIR:

You are hereby authorized and instructed to pay to

the Citizens State Bank of Watseka, Ill., any and all renewal commissions which may become due and payable under my contract with you, dated February 6, 1909. This order to remain in full force and effect until such time as it shall be released by the Citizens State Bank.

Yours very truly,<br>
ALFRED P. VERONI,<br>
District Manager.

"The above order is hereby made a matter of record and all renewal commissions due Mr. A. P. Veroni, District Manager, under his contract dated February 6, 1909, as they may become due and payable, will be turned over to the Citizens State Bank of Watseka, and their receipts for such commissions shall be binding upon said A. P. Veroni, District Manager.

J. E. SMITH,<br>
Manager."

Under this assignment agreement the appellant made two payments of the commissions thereby assigned to the bank: $25 on July 15, 1912, for renewal premiums collected in June, 1912; and $67.22 on August 15, 1912, for renewal premiums collected in July, 1912. On September 9, 1912, the appellee resigned his position as agent, to take effect September 16, 1912. After the resignation of the appellee, the appellant refused to make any further payments. Appellant claims that a few days before he received a notice of appellee's resignation he had discovered that the appellee for some time before that had been collecting insurance premiums and appropriating them to his own use; and the evidence shows that an indictment was found against the appellee on that account for embezzlement; and that he pleaded guilty to the indictment and was sent to the penitentiary. It is appellant's contention that under section 16 of appellee's contract with him he has a prior right to the commissions embraced in the assignment agree-

ment for the indebtedness of the appellee to him arising from the embezzlement; also that under section 13 these commissions were forfeited by the appellee, and that hence he is no longer legally obligated to pay them to the bank, because under the assignment agreement he obligated himself to pay to the bank only such commissions as would become due and payable to the appellee under the terms of the contract. We are unable to take this view of the legal obligation which the appellant incurred by the assignment agreement under the circumstances under which it was made. It is obvious that the purpose and object of the assignment agreement was to give the bank security for the payment of appellee's indebtedness to the bank, and it appeared from appellant's own statement at that time that the amount of the commissions which would thereafter become due and payale would be ample for that purpose; all the parties understood this. It would be unreasonable to assume that the bank would have paid $1,477.78 to the appellant unless it had this understanding of the matter, and it would be unreasonable to assume that the appellant would have exacted payment of that amount unless he had the same understanding; and the inference from the evidence is practically conclusive that the bank paid the money to the appellant which forms the consideration for the assignment agreement, and that the appellant received it with the understanding that the renewal commissions were pledged by the agreement to be paid to the bank when collected, to the extent of the bank's indebtedness, and that the appellant exacted the consideration and received the same with that end in view. Under the well-recognized principles of equitable estoppel, the appellant by executing the assignment agreement waived the right of priority to the commissions in question which he may have had under the contract with appellee; and also waived his right to forfeit

these commissions under the contract, because the exercise of such rights would be inconsistent with carrying into effect the assignment agreement and its purposes in good faith, and would work an injury to the bank in the rights which they acquired thereunder. It was said in *Smith v. Newton*, 38 Ill. 230, that "a much broader scope has been given to the doctrine of estoppel *in pais*, both in this country and in England, than formerly obtained, and have established that whenever an act is done, or a statement made by a party, which cannot be contradicted or contravened without fraud on his part and injury to others whose conduct has been influenced by the act or admission, the character of an estoppel will attach to what would otherwise be a mere matter of evidence." And in *Commercial Ins. Co. v. Ives*, 56 Ill. 402, it is held that an estoppel *in pais* arises, "when a party, either by his declaration or conduct, has induced a third person to act in a particular manner, he will not afterwards be permitted to deny the truth of the admission, if the consequence would be to work an injury to such third person." The principle underlying the doctrine of estoppel is also stated in *Noble v. Chrisman*, 88 Ill. 186, as follows: "Estoppel rests, in all cases, upon the position that, under the circumstances, the party to be estopped ought to have acted differently, if he did not intend to waive his right. The circumstances must be such that good faith required him to do otherwise, if he was not willing that the other party should act upon the faith of the supposed waiver of his right."

Applying the principles announced in the foregoing decisions to the present case, it is apparent that the appellant is estopped to do any act or exercise any right which would be inconsistent with the position taken by him, at the time the assignment agreement was executed with reference to its value, or which would injuriously affect the benefit the bank

acquired thereby as a security for the payment of appellee's debt.  The decree is affirmed.

*Affirmed.*