## NEWTON SMITH

*v.*

## SYLVESTER W. NEWTON.

1. WITNESS—*parties in equity.* In equity, a person who is a party to the record, is not thereby necessarily disqualified as a witness; the inquiry being, not so much whether the witness' name appears of record, as whether he is in fact, swearing to promote his own interest.

2. SAME—*competency—interest.* The general rule is, as to the disqualification of a witness on the ground of interest, that he must have some certain, legal and immediate interest in the result of the cause, or in the record; and such interest must exist at the time of his examination.

3. FORECLOSURE OF MORTGAGE—*defence thereto.* Where a mortgage is given upon one tract of land to secure the purchase money of another tract, which the mortgagee covenants to convey, with warranty, but to which he has no title, such failure of title in the vendor is a good defence in equity in a proceeding to foreclose the mortgage.

4. ESTOPPEL—*in pais—when it arises.* If the owner of a tract of land upon which a mortgage existed prior to his purchase, induces a third person to purchase the mortgage by admitting to him that it was all right and valid, and a lien on the premises, and stating that he would pay off the same, such owner will be estopped from afterwards urging any failure of the consideration of the mortgage, to the injury of that purchaser.

5. And in such case, it is immaterial whether the owner of the land knew there was no consideration for the mortgage. He ought to have known there was a consideration to have justified him in giving the purchaser the assurances he did in respect to its validity.

6. Whenever an act is done, on a statement made by a party, which can not be contradicted without fraud on his part and injury to those whose conduct has been thereby influenced, the character of an estoppel attaches to that which otherwise would be mere matter of evidence; and it is binding upon a jury even in opposition to proof of a contrary nature.

7. In order to create an estoppel *in pais,* or equitable estoppel, as now understood, there must be an admission intended to influence the conduct of the man with whom the party is dealing, and actually leading him into a line of conduct which must be prejudicial to his interests, unless the party estopped be cut off from the power of retraction.

8. To constitute an equitable estoppel there must be an admission by the party estopped, inconsistent with the evidence he proposes to give, or the

title or claim he proposes to set up; there must be action by the other party upon such admission, and an injury to him by allowing the admission to be disproved.

WRIT OF ERROR to the Circuit Court of Bureau County.

The case is fully stated in the opinion of the Court.

Mr. J. I. TAYLOR, for the plaintiff in error

Messrs. FARWELL and HERRON, for the defendant in error.

Mr. JUSTICE BREESE delivered the opinion of the Court :

This was a bill in chancery exhibited in the Circuit Court of Bureau County, by Sylvester S. Newton against Newton Smith and John D. Dickinson, wherein Newton alleged he was the owner of the east half of the south-west quarter of section twenty-five, (25) in township eighteen (18) north, range seven, (7) east of the fourth principal meridian, lying in Bureau County, the title to which he obtained of Charles W. Shinkle; that the defendant, Smith, claimed to have a mortgage on that tract, made by Shinkle when he owned the land, to Dickinson, to secure a note for five hundred and twenty dollars, and assigned by Dickinson to him, Smith, after it became due. The bill alleges there was no consideration for this note and mortgage, and that the same is a cloud upon complainant's title. It further alleges that the note and mortgage were given by Shinkle to Dickinson for the purchase money of the west half of this quarter section of land which Dickinson, by his bond made at the time of the execution of the note and mortgage, covenanted to convey to Shinkle by a warranty deed, alleging that this title bond was the only consideration for the note and mortgage—that Dickinson never had any title to the west half, nor was he ever able to perform the covenant in his bond. Complainant alleges that this west eighty was mortgaged long before the date of the bond, and that the mortgage has been

foreclosed long since, and the paramount title to this tract is in one Ament, and is now and has been for a long time entirely out of the power of Dickinson to make a good title to it, and that if he ever had any title to it, he has long since been divested of it—that Shinkle transferred to complainant this title bond and all the interest he had in the said west half, and that complainant has been ousted from the premises—that this mortgage is a great detriment to him, as he can neither sell nor encumber the east eighty by reason of this mortgage upon it of record, and that it is his right to have it canceled and discharged of record.

The bill makes Smith and Dickinson defendants, and prays that this mortgage be canceled, and that the consideration for executing the same be adjudged to have wholly failed, and for general relief.

Smith and Dickinson were brought into court by publication, and as to Dickinson, the bill was taken as confessed. Smith answered, admitting he was the owner of the Shinkle note and mortgage, and that the same were assigned to him by Dickinson, and denies any failure of consideration therefor ; that before he purchased of Dickinson, the complainant represented to him that he, complainant, owned the land covered by the mortgage, subject to the mortgage, and told defendant that the mortgage was all right and valid and a lien on the premises, and that he, complainant, would pay off the same, and that he, the defendant, by means of these representations was induced to make the purchase and take the assignment of the note and mortgage, and he insists that complainant, by reason of these representations, is estopped from all right to have the mortgage canceled—that complainant when he bought the land of Shinkle, agreed, as part of the consideration therefor to pay off this mortgage, and that he, defendant, is not chargeable with any default of Dickinson—that Dickinson purchased the land of one Dixon at the request of Shinkle, who pretended to know all about the title, and who assured Dickinson that it was all right, and that he, Shinkle, was willing to take the title from

Dickinson as it was, and that Dickinson has always been ready and willing to perform his part of the bond upon the payment of the purchase money as therein provided; that Dickinson was the owner in fee of the said west half when he executed the bond to Shinkle.

After the testimony of James M. Draper and David Dixon was heard, the particulars of which it is not now necessary to state, the defendant Smith, introduced the deposition of his co-defendant Dickinson, the person who had sold the land to Shinkle, who stated that Shinkle at the time of the trade knew the title and would risk it, and that the sale was made to him with that understanding. He sold Shinkle's note and mort-gage to defendant Smith without any deduction; that he, Dickinson, was in possession, claiming ownership of the land, but he sold and assigned the note and mortgage to Smith; that before Smith would purchase them he went with him to com-plainant early in October, 1859, and then Smith told complain-ant that he understood he, complainant, owned the premises mortgaged. He replied he did. Smith then told complainant that he talked of buying the note and mortgage on it, but would not do so until he could learn from complainant that it was all right, and that the note and mortgage would be paid. Complainant replied that he had agreed with Shinkle, when he bought the land, to pay off this mortgage, and that the mort-gage was as good security as was then in the State; that he was not ready to pay it then, but if Smith would buy it and wait a year or two he would pay him ten per cent. interest. Smith then said he would take the mortgage and give com-plainant a years time. Complainant said he might want Smith to foreclose the mortgage to cut off a railroad claim or mortgage; heard complainant say he gave Smith fourteen hundred dollars for the mortgaged premises and was to pay off this mortgage; that the notes mentioned in his bond to Shinkle are all past due and unpaid; that he, witness, has no interest in the result of this suit, Smith having executed and delivered to him on 29th February, 1864, a full release and discharge from all

16—38th Ill.

liability on account of the assignment of the note and mortgage. This release is set out in full in the deposition, is in the usual form, under seal and duly stamped.

The complainant moved the court to suppress this deposition of Dickinson, notwithstanding the release, which motion the court allowed and directed the same to be suppressed, and entered a decree for complainant that the premises be discharged from this mortgage.

The case is brought here by writ of error, and it is stipulated by the parties that the only objection to the deposition of Dickinson shall be on the ground of his interest in the result of this suit, and if this court shall decide that Dickinson was not disqualified that then the decree of the Circuit Court should be reversed.

It is insisted by the plaintiff in error that Dickinson was not disqualified by reason of being a party to the record, as the rule has long existed in this State that the mere fact that the witness is a party to the record does not necessarily disqualify him. In a court of equity the inquiry is, as was held in *Dyer* v. *Martin and Evans,* 4 Scam. 150, not so much whether the name of the witness appears upon the record as whether he is in fact swearing to promote his own interest. The general rule as to the disqualification of a witness on the ground of interest is that he must have some certain, legal and immediate interest in the result of the cause or in the record, and that interest must exist at the time when he is offered for examination, or when his deposition is taken. *Frink* v. *McClung,* 4 Gilm. 576.

When the deposition of Dickinson was taken, whatever might have been his liability to Smith by his assignment of Shinkle's note and mortgage before that time, it is very clear, by the release he was wholly discharged from all liability thereon, and had no possible interest one way or the other in the result of the suit or in the record. Smith, by reason of his release to him, could never call him to account, or recover of him the note and mortgage, in the event of his inability to

recover it by a sale of the land, or otherwise by suit against Shinkle. Dickinson was released from all liability growing out of the assignment of the note and mortgage and his competency was, by the release, fully restored. The court, therefore, erred in excluding his deposition as evidence.

But it is said by the defendant in error that the decree rendered by the court could not have been different if the testimony of Dickinson had been received. This question is outside of the stipulation of the parties, that embracing but the single question of the suppression of the deposition. But the question made is appropriate, and ought to be decided, and we have considered it.

We are inclined to the opinion that without the testimony of Dickinson, the decree should have been as rendered, in favor of the defendant in error, on the ground that it would be inequitable and unjust to force him to pay a large sum of money for property to which the latter had no title. Shinkle had a good title to the east half on which the mortgage was taken to secure the payment of the west half, to which the vendor thereof had no title. This fact would be a good defense in equity in a proceeding to foreclose this mortgage, for it is evident the defendant in error only undertook to pay this note and mortgage, on the condition that Dickinson had title to the west half. This he had not, and on the authority of *Tyler* v. *Young et al.*, 2 Scam. 447, and *Conway* v. *Case*, 22 Ill. 127, that fact of want of title would be a bar to a recovery on the note and mortgage.

But then comes in the suppressed testimony of Dickinson, which, if admitted by the court, would have established such facts as would amount to an estoppel *in pais* against any such defence to a recovery as is set up.

A much broader scope has been given to the doctrine of estoppels *in pais*, both in this country and in England, than formerly obtained, and have established that whenever an act is done, or a statement made by a party, which can not be contradicted or contravened without fraud on his part and

injury to others whose conduct has been influenced by the act or admission, the character of an estoppel will attach to what would otherwise be mere matter of evidence, and it will become binding upon a jury even in opposition to proof of a contrary nature. 2 Smith's Leading Cases 542 (top paging). As was said by the court in *Dazell* v. *Odell*, 3 Hill (N. Y.) 219, in order to create an estoppel *in pais*, or equitable estoppel, as now understood, there must be an admission intended to influence the conduct of the man with whom the party is dealing, and actually leading him into a line of conduct which must be prejudicial to his interest unless the party estopped be cut off from the power of retraction. And in the same case it was said by Justice BRONSON, that to constitute an equitable estoppel there must be an admission inconsistent with the evidence which he has proposed to give, or the title or claim he proposes to set up—there must be action by the other party upon such admission; and an injury to him by allowing the admission to be disproved. The authorities are uniform on this point. *Welland Canal Company* v. *Hathaway*, 8 Wend. 483; *Copping* v. *Gould*, 16 ib. 531; *Titus* v. *Morse*, 40 Maine 348.

The statement made to Smith by the defendant in error, when Smith called on him before he had bought the note and mortgage, fulfill the conditions of the rule as thus laid down in regard to equitable estoppels. The statements of defendant in error caused the purchase of the notes by the plaintiff in error, and equity demands he shall not now urge any defect in the title, to the injury of that purchaser. It is immaterial whether defendant in error knew the state of the title or not. He ought to have known it to be good, to have justified him in giving to the defendant in error the assurances he did, that the mortgage was as good a security as there was in the State, and that he would pay the note in a year or two, with ten per cent. interest. If an equitable estoppel can be made out, it is established in this case, and so the court would have determined, had Dickinson's testimony been received. The

suppression of his deposition was error, for which error the decree is reversed and the cause remanded.

*Decree reversed.*