## DAVID A. BARRY ET AL.

### v.

### ALEXANDER E. GUILD, JR.

*Mortgages—Trust Deed—Foreclosure—Defenses—Covenants—Breaches—Estoppel—Choses in Action, Not Assignable—Cross-bill—Solicitor's Fee.*

1. In proceedings to foreclose a mortgage brought by an assignee before maturity of the notes secured thereby, the mortgagor may interpose any defense of which he might have availed himself as against the payee of the notes.

2. A mortgagor in possession can not defend a bill to foreclose a mortgage given to secure purchase money on the ground of defects in the title of his grantor. If such title is defective, he must rely for relief on the covenants in the deed to himself, or such other contract as he may have with the grantor.

3. To constitute a breach of either the covenant of warranty or that for quiet enjoyment there must be a union of ouster or eviction and lawful and paramount title. Otherwise there is no right of action on the covenants or ground for relief in a court of equity, in proceedings to foreclose a mortgage given to secure purchase money.

4. The covenants of warranty and for quiet enjoyment when broken by actual ouster or eviction under paramount title, no longer run with the land, and a subsequent grantee has no right of action thereon.

5. In the case presented, it is *held:* That, as between the parties, the original deed in question must be taken to be an absolute conveyance; that the breaches of the covenants therein, if any, were choses in action which did not pass to the defendant by subsequent conveyances; that the evidence does not show an adverse possession under a paramount title; and that solicitor's fees were properly allowed.

[Opinion filed May 28, 1888.]

APPEAL from the Circuit Court of Du Page County; the Hon. C. W. UPTON, Judge, presiding.

Mr. ELLIS S. CHESBROUGH, for appellants.

Lack or failure of title to land, especially where the vendee has been evicted, has voluntarily yielded possession to the paramount title, or has never had possession, is failure of consideration and a good defense against purchase money notes given for such land. Gregory v. Scott, 4 Scam. 392; Davis v. McVickars, 11 Ill., 327; Slack v. McLagan, 15 Ill. 243.

Aside from the fact that Guild, as the trustee, the agent of both parties, could get no better title to the notes than his principal, the doctrine is firmly established in this State that the assignee of notes secured by mortgage, on suit to foreclose, is subject to any defense that may be maintained against the payee. Olds v. Cummings, 31 Ill. 188; Smith v. Newton, 38 Ill. 230; Weaver v. Wilson, 48 Ill. 125; Towner v. McClelland, 110 Ill. 542; Shippen v. Whittier, 117 Ill. 282.

Atkinson can be held (and hence purchase money notes to him defended) on his warranty to Guild, by any subsequent grantee, however remote. Wead v. Larkin, 54 Ill. 489; Richard v. Bent, 59 Ill. 38; Rawle on Covenants for Title, 5th Edition, Sec. 402.

And even a breach of covenant of seizin can be relieved against on suit to foreclose. Latham v. McCann, 2 Neb. 276; Rice v. Goddard, 14 Pick. 293.

And the reason for this rule is much stronger in the case at bar, as all the conveyances in the chain up to Barry are in equity conveyances by Atkinson, and his warranty to Guild was passed to the defendant Barry by Atkinson's direction.

It makes no difference that Atkinson may have been hon-

estly mistaken as to the quantity of land if the mistake was mutual. Champlin v. Laytin, 6 Paige, 189; same case affirmed, 18 Wend. 407; Voorhces v. De Meyer, 3 Sandf. Ch. 614.

Mr. James Lloyd, for appellee.

A grantor who conveys with warranty is concluded by his deed, and if he has not the land he warrants, it is his duty to acquire same to answer his covenants. Jones v. King, 25 Ill. 383, and cases cited; Andrew v. Coleman, 82 Ill. 26; White v. Patten, 24 Ill. 234; Wynkoop v. Corning et al., 21 Ill. 484; Stewart v. Metcalf, 68 Ill. 109.

A party having mortgaged property is not permitted to deny his own title, but is concluded by his mortgage; his warranty estops him. R. & M. R. R. Co. v. F. L. & T. Co., 49 Ill. 331, 344; Wills v. Somers, 4 Ill. App. 297; Herman on Estoppel, p. 8, Sec. 3; Hall v. Mut. Fire Ins. Co., 32 N. H. 297; Cabriska v. Columbus & C. N. R. Co., 23 How. 391; Jones on Mortgages, Sec. 682.

No party claiming title under a deed, however remotely, can be permitted to deny any fact recited in the deed under which he claims. Byrne v. Morehouse, 22 Ill. 603; Richards v. Melcrine, 76 Ill. 453.

Where a fee simple estate is granted by deed, title of which defendant covenants to warrant and defend, he is estopped to deny the solemn fact so stated in his deed. Jones v. King, 25 Ill. 383.

On bill to foreclose mortgages, title can not be questioned in defense; this can only be investigated at law; if he took by virtue of his mortgage any estate whatever, which is still subsisting, he is entitled to a decree, and the court will not inquire what interest he has in the mortgaged estate, or whether he has any interest at all in some part of it. Jones on Mortgages, p. 1482, Sec. 1482.

The recitals in a recorded deed in the chain of title are such notice to a purchaser as would put him on inquiry as to the nature and extent of the matters referred to in the recitals. C., R. I. & P. R. R. Co. v. Kennedy, 70 Ill. 350; Rupert v. Mack, 15 Ill. 541; McConnell v. Reid, 4 Scam. 117; Merrick

v. Wallace, 19 Ill. 486; Monson v. Kelly, 22 Ill. 610; Morris v. Hoyle, 37 Ill. 150.

Where there is enough to put a prudent man upon inquiry in respect to the title to land, he will be chargeable with all the facts he might have learned by the exercise of reasonab'e diligence in making inquiry as to the matters to which his attention has been directed. Citizens, etc., Bank v. Dayton, 116 Ill. 257; Crawford v. C., B. & Q. R. R. Co., 112 Ill. 314; White v. Kibby, 42 Ill. 510; Harris v. McIntyre et al., 118 Ill. 275.

Where recitals are contained in a deed in a party's chain of title, he will be presumed to have read them. Marks v. Gartside, 16 Il'. App. 177; Kibby v. White, 42 Ill. 510; C., R. I. & P. R. R. Co. v. Kennedy, 70 Ill. 350.

BAKER, J. This is a bill in chancery, filed in the Du Page Circuit Court by Alexander E. Guild, Jr., against David A. Barry and others, for the purpose of foreclosing a trust deed mortgage, given by said Barry to secure unpaid purchase money. The defense interposed by the defendants is that the notes described in the mortgage are purchase money notes given to one John Atkinson as part of the purchase money for the lands on which they are secured; that said Atkinson was the equitable owner of the premises, and that the title to twenty acres of the land had failed; that said twenty acres had been conveyed to one Charles Fitzsimmons long before the conveyance to Barry, and that Fitzsimmons was at that time and still is in possession of said twenty acres, and that defendants were at that time unaware of either such purchase or possession; and the defendants ask that a just and proportional deduction be made for the portion of the land to which the title has failed.

Martin Sauber and Charles Friehauf were the owners in fee of two tracts of land in township 37 north, range 11, east of the third principal meridian, in Du Page county, Illinois, to wit: Lot number 2 in Witt's subdivision of west half of northwest quarter, section 14, containing forty-eight acres, more or less, and the fraction in south half of section 15, con-

taining ninety-six acres, more or less; and this last mentioned tract is situate on Sag Island, in the Desplaines river.

On the 10th day of August, 1868, Sauber and Friehauf, by their warranty deed of that date, conveyed, or attempted to convey, twenty acres of this island tract of land to Charles Fitzsimmons, and on the 8th day of May, 1875, they executed to him a quit claim deed for the purpose of correcting a supposed error in the description of the twenty acres intended to be conveyed by the former deed, and the first of these deeds was filed for record on the 15th of April, 1870, and the other on the 25th of May, 1875. Sauber and Friehauf, by deed bearing date March 27, 1869, and recorded April 3, 1869, conveyed to John Atkinson said lot 2, in Witt's subdivision, and also the fraction in section 15, and said deed contained their reservation, "excepting twenty-five acres heretofore conveyed by the said Sauber and Friehauf." The year before Atkinson purchased he knew of the sale to Fitzsimmons, and at the time he was buying Sauber showed him the line and the stakes of the Fitzsimmons tract. On the 25th of April, 1870, Atkinson conveyed an undivided half of the island tract to Edwin Walker, and on the 23d of January, 1884, one John H. Lomax received from the United States Marshal for the Northern District of Illinois a deed for said Walker's interest in the premises, it having been sold under an execution. On the 21st of June, 1884, said Lomax procured a tax title to the whole of said tract of land.

On the 26th of June, 1884, Atkinson executed to Alexander E. Guild, Jr., a deed with full covenants of seizin of a right to convey, for quiet enjoyment, against incumbrances, and of warranty for the undivided one-half of said lot number 2, in Witt's subdivision, and for the undivided one-half of the fraction in south half of section 15, and on January 30, 1885, said Guild executed to George A. Gindele a special warranty deed against his own acts, for the same property. After the execution and delivery of these two deeds, Atkinson continued to be the real and equitable owner of the property conveyed. The object of the conveyances was to secure the payment by Gindele to Guild of $150, for the benefit of

Atkinson, and to enable Atkinson to raise money with which
to fight the tax title of Lomax. The arrangement was that
Gindele should have the one-fourth of the one-half interest
of Atkinson for clearing the title of the tax deeds. The pro-
posed litigation was commenced and prosecuted to a success-
ful conclusion. See Lomax v. Gindele, 117 Ill. 527.

Afterward Atkinson sold his three-fourths interest in the
undivided one-half of the property to the appellant Barry for
$4,500, and on May 6, 1886, Gindele executed a deed, with
covenants against his own acts, for an undivided three-fourths
of an undivided one-half of lot 2 above mentioned, and for
an undivided three-fourths of an undivided half of the frac-
tion in the south one-half of section 15, in T. 37 N., 11, E. of
the third principal meridian, containing ninety-six acres. Said
Barry executed, and, on said 6th day of May, acknowledged
and delivered the trust deed mortgage here in suit. It con-
veyed and warranted all the property described in the deed
from Gindele to him, Barry, in trust to Alexander E. Guild,
to secure the payment of $4,000 purchase money included in
promissory notes given by Barry to Atkinson, and interest
thereon. These notes were afterward assigned before matu-
rity by said Atkinson to said Guild, and the present bill to
foreclose was, after default by Barry, exhibited by Guild.

It is the firmly established doctrine in this State that when
the assignee, before maturity of notes secured by a mortgage,
comes into a court of chancery to foreclose the mortgage, he
holds such mortgage subject to all the infirmities to which it
would have been liable in the hands of the assignor, and that
the mortgagor may avail himself of any defense he could
have interposed as against the payee of the notes, and this
rule is based upon the ground the mortgage is not at law an
assignable instrument. See Olds v. Cummings, 31 Ill. 188, and
numerous subsequent cases.

Atkinson having conveyed the lands to Guild by a deed
which was absolute upon its face, and having procured the
title to be conveyed through said deed and the subsequent
deeds from Guild and from Gindele to Barry, who was pur
chaser for a valuable consideration of the equitable interes

of Atkinson in the lands, would now be estopped from claiming that such supposed deed was absolute under a secret agreement shown only by extrinsic evidence, and of which Barry had no notice—merely a mortgage to secure the payment of $150 to Guild. As between Barry, the purchaser for value without notice, and Atkinson, or his assignee, claiming the benefit of the mortgage, the deed from Atkinson must be regarded to be what it purported to be; that is, an absolute deed to Guild with covenants. Barry should have the full benefit of the contract which he intended to, and apparently did make, and which the conduct of Atkinson, Guild and Gindele justified him in believing he was making. On the other hand, Atkinson and Guild should only be held for such kind and degree of liability as the contracts they assumed to make would render them responsible for. The covenants of seizin, of good right to convey, and against incumbrances, contained in the deed to Guild, were personal covenants not running with the land, or passing to Guild's grantees, and if there have been breaches of these covenants, then such breaches occurred as soon as the deed was executed and delivered, and vested in Guild choses in action which were not assignable and did not pass to Gindele or to Barry. The covenants in the deed for quiet enjoyment and of warranty ran with the land, and passed to Barry by the deed from Gindele.

It is insisted by appellee that the deeds in the chain from Atkinson to Barry only purported to convey an undivided interest in ninety-six acres of land, and that the evidence shows that the fractional tract in section 15 contains that number of acres, after making deduction for the twenty acres conveyed to Fitzsimmons. The position assumed is untenable, both in respect to matter of fact and matter of law. There is no competent evidence either to show or tend to show that ninety-six acres remain after deducting the twenty acres; the evidence in that behalf is mere hearsay and surmise. The presumption of fact would be, in the absence of proof to the contrary, that as the tract contained ninety-six acres according to the government survey, it, in fact, still contains that

number of acres, and that if the title has failed to twenty acres, then only seventy-six acres were conveyed to Barry. But the statement in the deeds, " containing ninety-six acres, more or less," is of comparatively slight importance. That which Barry contracted for, and the deeds purported to convey to him, was an undivided three-fourths interest of an undivided one-half interest in the fraction in the south half of section 15. That which the deeds demanded was an undivided interest in the legal subdivision of land named in the second call of the deeds, be the actual number of acres more or less. The purchaser took the risk of a mistake in the government survey that would make the actual quantity of land less, also of loss from the island by erosion; and he was entitled to the benefit, if any, not only of a mistake in the original survey that might increase the actual quantity, but of any gain by accretions.

Upon a bill to foreclose a mortgage given for purchase money, a mortgagor in possession can not defend on the ground of defects in the title of his vendor. He can not retain the land under a title which, by force of the statute of limitations, may ripen into a good title, and at the same time refuse to pay for the land. The doctrine is that where there has been no fraud and no eviction under paramount title, the vendee, or a party in possession under him, can not controvert the title of the vendor; that in such cases the vendee and those claiming under him must rely for relief on the covenants in the deed of the vendor, or other contract he may have; and that the courts will not substitute for the contract of the parties one which they did not make. Beebe v. Swartwout, 3 Gilm. 162; Smith v. Newton, 38 Ill. 230; Weaver v. Wilson, 48 Ill. 125; Peters v. Bowman, 98 U. S. 56; Latham v. McCann, 2 Neb. 276.

It is suggested by appellee in his brief that appellants filed in the court below no cross-bill asking for affirmative relief. In Beebe v. Swartwout a cross-bill was filed; but in Weaver v. Wilson, where there was a condition in the note, a proportionate deduction from purchase money was allowed upon answer. But, in the view we take of the case, it is not essen-

tial to determine the point whether a cross-bill is necessary. So, also, in Beebe v. Swartwout, there is a *dictum* to the effect that in the absence of fraud a court of chancery would have no jurisdiction to set off damages accrued for breach of covenant in the vendor's deed against purchase money, unless the vendor was insolvent. In view of the liberality that now prevails in chancery courts in respect to the allowance of equitable set-offs and recoupments, and of the cases we find in the books, and especially in view of the present statute allowing conditional or deficiency decrees and general execution against the property of the mortgagor, it may well be doubted if the rule suggested would now be held. But, this point also, it is unnecessary now to decide.

The only breaches of covenants that appellants set up in their answer are " that the title to twenty acres of said land has failed " and " that said tract of twenty acres had been conveyed to one Charles Fitzsimmons long before this defendant Barry gave the aforesaid mortgage ; that said Fitzsimmons was at that time and still is in possession of said tract, and that the defendants were unaware of either the purchase or possession, aforesaid, of said Fitzsimmons, at the time the defendant David A. Barry purchased the premises described in the bill and executed his notes therefor." The presumption from this pleading, even without the aid of the rule that all pleadings must be taken most strongly against the pleader, would be that Fitzsimmons was in the actual possession of the tract prior to the date of the conveyance to Barry, and while the title of Atkinson was either in Gindele or Guild, or before Atkinson made the deed to Guild. If the twenty acres were in the adverse possession of Fitzsimmons at the time that Atkinson made his deed to Guild, then not only the personal covenants in such deed of seizin and of good right to convey, but also the covenants of warranty and for quiet enjoyment were broken immediately, and the cause of action for breach of such covenants was in Guild. 2 Jones on Mortgages, Sec. 1502. If the entry and adverse possession under paramount title were while either Guild or Gindele held the title of Atkinson, then the breaches of the covenants that ran with

the land were either in the day of Guild or in the day of
Gindele. Hence, the cause of action as shown by the answer
accrued to either Guild or Gindele, and was not assignable,
and did not pass to Barry by the subsequent deed or deeds.
Covenant does not lie by an assignee for a breach done before
his time, and it is immaterial that the covenant is one which
otherwise would run with the land. 4 Kent's Com., star
pages 471, 472, etc., and authorities cited in note " A " to star
p. 472. The covenants of warranty and for quiet enjoy-
ment pass to the assignee where the eviction is subsequent;
but such covenants, when broken by actual ouster or eviction
under paramount title, no longer run with the land, and do not
go to the heir, devisee or grantee. Bedoe's Executor v.
Wadsworth, 21 Wend. 120, and cases there cited.

The case made by the evidence is not different from that
suggested by the answer. The only testimony tending to show
an adverse possession of the twenty acres is that of Gindele,
who states that he never had or could get possession of the
twenty acres either personally, when he held the legal title to
Atkinson's interest, or subsequently as agent of Nunnemacher,
who is purchaser from Barry and one of the appellants herein.
It does not appear from his testimony that he has been on the
land since 1869, 1870 or 1871, and he is not certain he was on
the twenty acres then. He states that he has passed close to
the land every year since 1869, sometimes several times a
year, sometimes a couple of times a month. He says that the
Bodenschak and Earnshaw Stone Company are in possession
of the land, and have a derrick, steam engine and tool house
there, and that the first and last time he saw the tool house
and derricks was in July or August, 1887, and it was from the
railroad cars, and he was about half a mile from the tool house,
and does not know whether the land is fenced or not. There
is nothing in this evidence to show that the Bodenschak and
Earnshaw Stone Company had not been in possession of the
land, and the derrick and tool house were not standing thereon
long prior to the conveyance to Barry. In fact, Gindele says
in his examination that he never knew anything about the
location of the twenty-acre tract or the improvements thereon

until in the summer of 1887, when his attention was called to them by Mr. Colby and Mr. Chesbrough.

It is urged by appellants that a breach of the covenant of seizin can be relieved against in a suit to foreclose; and that all the conveyances in the chain up to Barry are, in equity, conveyances by Atkinson, and his covenants to Guild were passed to Barry by his, Atkinson's, direction. Even if Atkinson continued to be the equitable owner and the deeds from Guild and from Gindele were under an agency from him, yet the scope of that agency, until the deed to Barry was made, was merely for the purpose of contesting the tax title of Lomax. The deed to Barry was not within the scope of the agency that existed when the deed of Atkinson was executed. But even if it was, the scope of the agency could not be extended beyond the covenants contained in the deeds that were in fact made. The court has no power to make a new contract for the parties. They must all be bound by the bargain they have made. In the absence of fraud or mistake, the contract, as shown by the conveyances made, must be the measure of the rights vested and the liabilities imposed. Barry must be presumed to have known the legal effect of the title papers he took, and to have been content therewith. It must be considered that had it been the intention of the contracting parties that Barry should have the benefit and Atkinson should assume the burden of covenants from the latter of seizin and of good and lawful right to convey, then such intention would have been carried into effect by a quit claim deed from Gindele to Atkinson, and by a deed from the latter to Barry containing such covenants, or in some other appropriate way.

Probably the most fatal objection to the claim of appellants is the fact that it does not appear from the evidence that the possession of the Bodenschak and Earnshaw Stone Company is under paramount title. The only thing that tends in the least to connect that company with the title of Fitzsimmons is the answer of Gindele to the question, "Did the company state to you how they obtained title?" His answer is: "Yes, sir, through Fitzsimmons." Whatever probative force there

might otherwise be in this question and answer, it is wholly destroyed by the statements of the witness on cross-examination. He there says: "I never stated that Bodenschak and Earnshaw got possession through Fitzsimmons. I said they had possession, but I don't know how they got it. I am positive that I did not say in my direct examination that they got possession through Fitzsimmons. If I did, I was mistaken, that is all, because I do not know how they got possession." So, assuming that the outstanding title of Fitzsimmons is the paramount title to this twenty acres of land, it does not appear that the adverse possession held by the stone company is under such title.

To constitute a breach of either the covenants of warranty or that for quiet enjoyment, there must be a union of ouster or eviction and lawful and paramount title. Otherwise there is no right of action on the covenants, or ground for relief in a court of equity upon bill filed to foreclose a mortgage given for purchase money. Beebe v. Swartwout, *supra;* Peters v. Bowman, *supra;* Latham v. McCann, *supra;* Hill v. Butler, 6 Ohio St. 207; 2 Jones on Mortgages, Secs. 1500, 1501, etc.

For the reasons we have indicated herein, we are of opinion there was no error in the action of the Circuit Court in refusing to allow, as a credit upon the notes and mortgage, the relative and proportionate value of the land in the possession of the stone company, and in rendering a decree in favor of appellee for $4,356.50, the full amount of principal and interest on the notes.

We also think it was not error to allow the solicitor's fee of $100 to be taxed as costs. The fee was expressly provided for and its amount fixed in the mortgage deed; and although appellee presented the bill of complaint in his own behalf, yet it appears from the record that at the taking of the depositions and testimony he was represented by a solicitor, and that at the hearing of the cause he appeared by counsel, who argued the case in his behalf. The decree is affirmed.

*Decree affirmed.*