(No. 13608.—Reversed and remanded.)

ALFRED P. VERONI, Defendant in Error, *vs.* JESSE E. SMITH
AND THE CITIZEN'S STATE BANK.—(JESSE E. SMITH,
Plaintiff in Error.)

*Opinion filed June 22, 1921.*

1. ACCOUNTING—*suit may be brought where any party defend-
ant resides.* Under section 3 of the Chancery act "suits in chan-
cery shall be commenced in the county where the defendants, or
some one or more of them, resides," and where two defendants to
an action for an accounting reside in different counties the suit
may be brought in either county where both are necessary parties,
although the principal object of the suit is to compel one defend-
ant to pay the complainant's indebtedness to the other.

2. SAME—*when manager of insurance company waives right to
declare forfeiture of agent's commissions on premiums.* Although
an insurance agent's contract gives his manager the right to declare
a forfeiture of the agent's commissions on premiums if the agent
resigns, the manager will be deemed to have waived such right
where he has agreed to an assignment of the commissions to a bank
to which the agent is indebted, in consideration of the payment
to the manager by the bank of his claim against the agent; and
the bank will be entitled to sufficient commissions to cover all the
agent's indebtedness to it where the evidence shows that all the
parties so understood the agreement, but after the bank is paid
there is no waiver or estoppel of the right to forfeiture as against
the agent.

WRIT OF ERROR to the Appellate Court for the Second
District;—heard in that court on appeal from the Circuit
Court of Iroquois county; the Hon. FRANK L. HOOPER,
Judge, presiding.

PALLISSARD & BENJAMIN, and HOYNE & O'CONNOR,
for plaintiff in error.

C. G. HIRSCHI, for defendant in error.

J. W. KERN, for the Citizen's State Bank.

Per CURIAM: Defendant in error, Alfred P. Veroni, brought suit in the circuit court of Iroquois county against plaintiff in error, Jesse E. Smith, and the Citizen's State Bank of Watseka, as defendants, praying for an accounting. A decree was entered in his favor, which was affirmed by the Appellate Court. The cause has been brought here by *certiorari* for further review.

Defendant in error, Veroni, entered into a contract February 6, 1909, with plaintiff in error, whereby he agreed to become district insurance agent in the counties of Iroquois, Ford, Livingston and Kankakee for the Prudential Insurance Company, plaintiff in error being the manager of the company for northern Illinois. Under the contract Veroni obtained insurance and became entitled to a percentage of the premiums paid by the insured, depending on the character of the insurance, and premiums on renewals. While carrying out this contract he became indebted to the Citizen's State Bank of Watseka. In negotiations for settlement with the bank it was proposed that he assign certain of the commissions earned under the contract and due him from the insurance company as security for the payment of the indebtedness to said bank. Plaintiff in error, when approached by Veroni on this subject, at first refused to permit such assignment. By arrangement a meeting was had in plaintiff in error's office in Chicago between Veroni and cashier Lee of the Citizen's State Bank to consider the question of assigning to the bank the commissions earned by Veroni under the agreement. Plaintiff in error finally agreed that if the amount of the indebtedness which he claimed Veroni owed him was paid he would agree to such an assignment. In view of this understanding the bank, through its cashier, Lee, O. K.'d two checks on the bank amounting to $1477.78, Veroni giving his note to the bank covering that amount, and the checks were paid by the bank to plaintiff in error. Following this, and in consideration

of the payment of these checks to plaintiff in error, the following agreement was entered into between the parties:

"CHICAGO, ILL., *May 29, 1912.*

"*Mr. J. E. Smith, Manager Prudential Ins. Co., Chicago, Ill.:*

"MY DEAR SIR—You are hereby authorized and instructed to pay to the Citizen's State Bank of Watseka, Ill., any and all renewal commissions which may become due and payable under my contract with you dated February 6, 1909. This order to remain in full force and effect until such time as it shall be released by the Citizen's State Bank.

"Yours very truly,

ALFRED P. VERONI, *District Manager.*

"The above order is hereby made a matter of record, and all renewal commissions due Mr. A. P. Veroni, district manager, under his contract dated February 6, 1909, as they may become due and payable, will be turned over to the Citizen's State Bank of Watseka, and their receipts for such commissions shall be binding upon said A. P. Veroni, district manager.

J. E. SMITH, *Manager.*"

Under that assignment agreement plaintiff in error paid the bank $25 July 15, 1912, and $67.22 August 15, 1912. September 9, 1912, Veroni resigned his agency, to take effect September 16, 1912. Plaintiff in error refused to make any further payments to the bank, claiming to have discovered that Veroni had collected premiums for policies issued and appropriated the money to his own use. The record shows Veroni was indicted for embezzlement, plead guilty and was sentenced to the penitentiary. Plaintiff in error claimed that Veroni's agency contract gave him, as representing the insurance company, a prior right to the commissions on renewal premiums, to be applied to the payment of the amount Veroni had embezzled; also that by the terms of the agency contract, if it was terminated, the amount paid Veroni under the contract should be full settlement of all his claims and demands, and all compensation which a continuance of the contract might have secured him should be forfeited. It is the contention of defendant in error that plaintiff in error waived his right to priority and to forfeiture under the agency contract and

is now estopped to assert it. The circuit court ordered and decreed that the plaintiff in error render an account of all commissions on renewal premiums on policies procured by Veroni; that the cause be referred to a special master in chancery to take and state the account; that all such commissions on renewal premiums should be paid by plaintiff in error to the Citizen's State Bank within ninety days after the approval of the master's report by the court, until the indebtedness of Veroni to the bank had been fully paid, and that the balance, if any, be paid to Veroni.

The first question raised by counsel for plaintiff in error is, that he was improperly made a defendant in this proceeding in the circuit court of Iroquois county. The bill was filed by Veroni in the circuit court of said county, and both plaintiff in error and the Citizen's State Bank of Watseka were made defendants. Plaintiff in error was served with summons and thereupon filed a special appearance in the case and moved to dismiss the bill for want of jurisdiction, on the ground that he was a resident of Cook county and could not properly be sued in Iroquois county concerning the matters set up in the bill; that there was no joint or several liability of the defendants apparent on the face of the bill, and that it was evident from its allegations, taken as true, that defendant in error had an adequate remedy at law, and that the purpose of joining the plaintiff in error with said bank was to compel plaintiff in error to litigate the matters in controversy in Iroquois instead of Cook county. The motion to dismiss was denied. Taking the allegations of the bill as true, the suit was properly brought in Iroquois county under section 3 of the Chancery act, (Hurd's Stat. 1917, p. 197,) which provides that "suits in chancery shall be commenced in the county where the defendants, or some one or more of them resides." It is obvious that the principal object of the suit was to compel plaintiff in error to make payments to the Watseka bank, but it also appears that in the accounting to be had Veroni

had a vital interest, as any payments of the money to the bank would to that extent reduce Veroni's indebtedness to the bank. If the amounts were sufficient to pay all the indebtedness Veroni would thereupon be relieved entirely from any further obligation to the bank. It seems also manifest that Veroni could not have a complete and adequate remedy in any suit at law in the enforcement of his right to an accounting, as the agreement which is the basis of the accounting is tripartite in character, and the three parties thereto were all necessary parties to the suit. The motion to dismiss for want of jurisdiction was rightly denied by the trial court.

Whether or not the plaintiff in error did waive his right to enforce the provisions of the agency contract depends upon the construction of the contract, and especially upon what was the understanding at the time it was executed. Counsel for plaintiff in error insist that nothing was said or done by plaintiff in error at the time this contract was executed that in any way supports the contention that he waived the provisions of the contract referred to so far as they applied either to Veroni or the bank. It appears from the record that there was considerable talk with plaintiff in error both by Veroni and by representatives of the bank, before the execution of the agreement, as to why Veroni wished to assign his earned and uncollected commissions to the bank. Cashier Lee of the bank stated he had a conversation with plaintiff in error some time before the execution of the assignment in which he stated to him that Veroni owed the bank money and it wished to have this past indebtedness secured and also to loan him some additional money to make it possible for him to conduct his business in a successful way. Later, when Lee and Veroni met plaintiff in error in his office in Chicago they talked about the assignment of the premiums, which was rejected at first by plaintiff in error, and during this conversation he told both Lee and Veroni that if he con-

sidered allowing the assignment of these premiums to be made under any consideration, Veroni must pay him certain moneys then due, and that as the result of the talk two checks, amounting to $1477.78, were O. K.'d by Lee and afterwards paid by the bank to plaintiff in error to clear up the indebtedness that Veroni owed plaintiff in error. Veroni at about the same time executed notes to the bank to include the money so advanced by the bank on these two checks. There can be no question under this record that the cashier of the bank understood from plaintiff in error at that time that the assignment of the commissions was made to cover this new indebtedness of Veroni to the bank, and that under the reasoning of the decisions in this State plaintiff in error must be held to have waived his right, as to that indebtedness, to insist upon the forfeiture of the premiums earned by Veroni, under the forfeiture provisions of the contract, on account of the resignation of Veroni.

A more serious question remains as to whether or not plaintiff in error waived the right to raise the forfeiture provisions as applying to the indebtedness other than this $1477.78 to the bank, most of which had been incurred by Veroni to the bank before the assignment was executed. It is insisted by counsel for plaintiff in error that he had no understanding or knowledge as to this past indebtedness of Veroni to the bank at the time the assignment agreement was executed, and had no reason to believe from his talk with Veroni and cashier Lee that the assignment was made for the purpose of covering this past indebtedness. On this record we cannot agree with the reasoning of counsel for plaintiff in error on this question. Lee testified that they told plaintiff in error as to this indebtedness, and stated that one of the reasons why they wanted to have an assignment of the accounts to the bank was to secure this past indebtedness, and there is no doubt that Lee had talked with the plaintiff in error at other times previous to the execution of this contract as to Veroni's past indebtedness to the bank

and about this assignment of the premiums for the purpose, in part at least, of securing this past indebtedness. The evidence as to the actions and statements of plaintiff in error after the execution of this contract strongly supports the conclusion that he understood that these assignments were made to secure the past indebtedness as well as the new indebtedness arising from the payment made by the bank for Veroni at the time the assignment was executed. Of course, the statements made after the execution of the contract would not, in themselves, be binding as to its effect, but they throw a strong light upon plaintiff in error's understanding of the transaction. The president of the bank, J. G. Williams, stated that shortly after the execution of the assignment he had a talk with plaintiff in error with reference to security under the assignment, and that plaintiff in error told him that the bank would get its money after he got his; that about two months later, in September, 1912, in the presence of cashier Lee, he had another conversation with plaintiff in error, in which plaintiff in error said, in regard to the amount of Veroni's commissions, "I don't exactly know, but there is an abundance to pay both of us." On October 12, 1912, Lee wrote a letter to plaintiff in error, a copy of which was introduced in evidence, which stated, in answer to a letter he had received from plaintiff in error as to these commissions: "We are surprised at the position you take in reference to the commissions assigned to us by A. P. Veroni,—especially under the circumstances connected with the assignment. We were given to understand that the amount of the commissions that would be due to Mr. Veroni on the insurance that he had written would be ample security for what he owed to you and his indebtedness to us. With this understanding, when the writer was in your office last May Mr. Veroni executed a note for $1500 to our bank, and Mr. Veroni then drew two checks to pay you, one for $379.88 and one for $1097.99,—$1477.78,—and I, as cashier, certified them and

they were paid. You will also remember that when Mr. Williams and I were in your office about two weeks ago you assured us that the amount due Mr. Veroni was ample to pay both and that we should be protected. Now, Mr. Smith, we feel that in view of the circumstances connected with this matter at the beginning, you ought not to take the position that you do in your letter and we hope that you will not. We have been perfectly fair with you and you profited by the arrangement, and I hope now that you will deal with us in the same spirit. Except for the confidence we reposed in you the arrangements would not have been made." On the following day plaintiff in error replied to the above letter, stating among other things: "I have your favor of October 14 and have carefully noted contents. I expect to see you shortly and will explain matters satisfactorily to you. In the meantime, do not worry over affairs at all." Later, when Veroni was indicted, plaintiff in error was called in conference with Veroni in the presence of several others, and Veroni and some of the others present testified, without contradiction except by plaintiff in error, that Veroni said he would plead guilty without a contest if plaintiff in error would carry out his agreement as to paying the renewals to the bank. The evidence also shows that Veroni gave the bank, after the execution of this assignment, two notes to pay his indebtedness to the bank, including the $1477.78 which the bank paid plaintiff in error at that time, the two notes amounting to $4500. There is also evidence in the record which counsel for defendants in error contend shows that plaintiff in error gave the bank, after the execution of the assignment, a statement of the insurance policies upon which the premiums were to be paid to Veroni. The evidence is not entirely clear as to just how much these premiums amounted to, but apparently it was something over $1000 for the first year and an appreciable sum several years thereafter. There is also evidence in the record by Lee and Veroni that before the exe-

cution of the assignment agreement plaintiff in error told
Lee that the premiums that would still be due to Veroni un-
der his contract would amount to between $7000 and $9000.

We think the record clearly shows that the purpose and
object of the assignment were to give to the bank security
for the payment of Veroni's indebtedness to the bank,—not
only for the money paid by the bank for Veroni to plain-
tiff in error at the time the assignment was made, by the
O. K. of checks by the cashier, but for the past indebted-
ness and other indebtedness of Veroni to the bank. It is
difficult to conclude that the bank would have advanced the
$1477.78 to plaintiff in error at the time unless this had
been the understanding of the bank officials, and it would
appear from the evidence that plaintiff in error must have
so understood the effect of this agreement, and that the
renewal commissions were pledged by the agreement to be
paid to the bank, when collected, to the extent of the bank's
indebtedness, and that the plaintiff in error exacted and
received the consideration of $1477.78 with that under-
standing. Under the well recognized principles of equita-
ble estoppel, plaintiff in error by executing the assignment
agreement waived the right of priority to the commissions
and also waived his right to forfeit these commissions un-
der the contract to the extent of the amount of the indebt-
edness due the bank from Veroni, and is estopped to deny
he is obligated by the assignment agreement to that extent.
*Smith* v. *Newton,* 38 Ill. 230; *Commercial Ins. Co.* v. *Ives,*
56 id. 402; *People* v. *Brown,* 67 id. 435; *Noble* v. *Chris-
man,* 88 id. 186; *Mayer* v. *Erhardt,* 88 id. 452; *Hill* v.
*Blackwelder,* 113 id. 283; *Robbins* v. *Moore,* 129 id. 30;
*Walls* v. *Ritter,* 180 id. 616.

We are of opinion, however, that the evidence did not
justify the decree of the circuit court and the judgment of
the Appellate Court that plaintiff in error waived his right,
as against Veroni, to claim priority under the agency agree-
ment and forfeiture after the bank had been paid from

renewal commissions the full amount of Veroni's indebtedness to it. It seems clear from what preceded the transaction of making the assignment agreement, as well as from the terms of the assignment agreement itself, that it was intended to secure the bank, and after it had received its money we find nothing to indicate any purpose or intention to abrogate any of the provisions of the agency agreement as between plaintiff in error and Veroni. At the time the assignment agreement was made Veroni was in the active discharge of his duties as agent. Plaintiff in error testified that Veroni was not short in his accounts on the day the assignment was made. No circumstance was proven, nor would the language of the assignment itself justify the construction, that plaintiff in error intended to or did waive any prior right he had under the agency contract, or the right to declare a forfeiture of the renewal commissions when it was terminated, except to the extent of the amount of the indebtedness of Veroni to the bank. Further than that, there is no element of estoppel against his claiming his rights, under the agency agreement, against Veroni. The decree in so far as it ordered plaintiff in error to pay the bank indebtedness out of renewal premiums was correct, but in so far as it ordered the balance, if any, payable to Veroni it was erroneous. Plaintiff in error's obligation under the assignment agreement will be satisfied when the bank is paid the amount due it from Veroni.

The judgment of the Appellate Court and the decree of the circuit court are reversed and the cause remanded to the circuit court, with directions to enter a decree in accordance with the views herein expressed.

*Reversed and remanded, with directions.*